JOHN H. HANSON V. JOSEPH A. TOWLE, *as Adm'r.*

1. CLAIMS AGAINST ESTATES OF DECEDENTS; *Exhibition of Claim.* The exhibition of a claim to the administrator of an estate, made under section 84 of the act concerning executors and administrators, does not suspend or affect the running of the statute of limitations.

2. LIMITATION OF ACTIONS; *Sec. 106 of Executors-and-Administrators Act, Construed.* Section 106 of said act limits the time in which a suit may be brought to establish a claim either in the probate or district courts.

3. ———— *Contingent Promise to Pay.* A promise to pay a debt upon certain conditions cannot be invoked to avoid the statutes of limitations unless the conditions are complied with.

4. ———— *Acknowledgment, Required to Suspend Statute.* A mere reference to the indebtedness, although consistent with its validity, and implying no disposition to question such validity, or a mere suggestion of some action concerning it, is not such an acknowledgment as is contemplated in section 24 of the code of civil procedure as sufficient to suspend the running of the statute of limitations. There must be an unqualified and direct admission of a present subsisting debt on which the party is liable, and which he is willing to pay.

5. ———— *Administrator, No Power to Revive Debt Barred by Statute.* An administrator has no power by promise or acknowledgment to revive against an estate a claim once barred by the statute of limitations.

### *Error from Franklin District Court.*

ACTION by *Hanson*, against *Towle* as administrator, upon two promissory notes, commenced originally in the probate court. That court having disallowed the claim, *Hanson* appealed the case to the district court, where a trial was had at the November Term 1876. Judgment in favor of defendant *Towle*, and *Hanson* brings the case here. The facts are sufficiently stated in the opinion.

*W. Littlefield,* and *C. R. Meigs,* for plaintiff in error:

1. The claim of Hanson was not barred by statute. It was legally exhibited to Towle, the administrator, in substantial compliance with § 84, p. 449 of Gen. Stat., in November 1871, which was before any question of limitation could arise. A substantial compliance with the law we be-

lieve to be sufficient; (6 Hill, 389;) and if the claim has
been properly exhibited we insist that we have until the
estate is entirely closed and settled up to establish the same
as provided in § 91, p. 450 of Gen. Stat., the section under
which we are proceeding. (23 Mo. 256; 29 Ark. 238; 29
Wis. 60.) As this question involves a consideration and
construction of the provisions of the law governing the al-
lowance and payment of debts of deceased persons, let us
look at it for a moment. Our executors-and-administrators
act, (ch. 37, Gen. Stat.,) is generally taken from Ohio; but
the provisions in relation to "allowance and payment of
debts," (art. 5, §§ 80 to 102,) are taken from the statutes of
Missouri, substantially; (see 1 Wagner's Statutes, pp. 101,
102.) It will be perceived that § 84 is a copy of the Mis-
souri statutes; but in the Missouri act there immediately
follows a section which is omitted from our statute, which
requires the claim thus exhibited to be presented to the court
for allowance within three years from the granting of the
first letters on the estate. Our statute has no provision cor-
responding to this, and it seems to have been purposely
omitted. Section 106 of our statute provides that an ad-
ministrator shall not be liable to a suit of a creditor unless
commenced within three years from the time of his giving
bond. But that section applies to a different matter. There
are two ways to establish claims against an estate provided
for by our statute: 1st, a claim may be exhibited to the ad-
ministrator according to § 84, and then afterward established
in the probate court according to the provisions of § 91; or
2d, a suit may be commenced under § 86, and is to be con-
sidered legally exhibited from the time of the service of
summons, (§ 83,) and in this case the limitation in § 106 ap-
plies. This § 106 is taken from Ohio. 1 Swan & Critchfield,
583; 2 Ohio St. 156. Consequently § 106 has no application
to this proceeding, which is not a suit brought under § 86,
but an attempt to establish a claim against an estate after the
same has been exhibited, and based upon § 91 of our statute.
There is nothing in our statutes which prevents the allowance

of our claim, as the exhibition of the same to the administrator stopped the running of the statute of limitations. 23 Mo. 256; 36 Mo. 96.

2. The administrator has promised in writing to pay this claim; and in the case of the last note at least before the five-years limitation had run; and he has by that means bound the estate he represents to pay the claim; (see Towle's letters and evidence, and deposition of Hanson.) 13 Ohio, 271; 16 Mass. 429; 36 N. J. L. 44; 35 Maine, 364; 17 Georgia, 96; 9 Allen, 502; 4 T. B. Monroe, 36; 12 T. B. Monroe, 408; 5 Binn. 573; 15 Johns. 3. That there was a sufficient promise to pay, seems to us to be established beyond question. The promise to pay, if made, was made at least on the last note before the bar; and the authorities referred to show no question as to the right or power of the administrator by promise to stop the running of the statute before it has become a bar, distinguishing this from a case where the bar is already completed and a promise made afterward.

*John W. Deford,* for defendant in error:

1. Hanson claims that the testimony of himself and Towle shows a "substantial compliance" with § 84, Gen. Stat. 449. Suppose that the facts stated by these two witnesses did constitute a "substantial" (nay, even a literal) compliance with § 84, yet I maintain it had no operation whatever upon the running of either the three-year, or five-year, statute of limitations. The only effect of a "legal exhibition" of a demand under § 84, is to settle its classification under § 80. (23 Mo. 256; 3 Kas. 392.) A claimant may *exhibit* his claim under § 84, at any time within the three years allowed by § 81; but if during the same time, he fails to institute adversary proceedings against the administrator under §§ 91–94, or § 86, his claim will be barred by § 106. Counsel for Hanson suggest that § 6 on p. 102 of 1 Wag. Mo. Stat. is omitted from the Kansas act; but § 106 (copied from the Ohio laws) of our act certainly covers the whole ground occupied by said § 6 in the Missouri statute. *McKinzie's Adm'x v. Hill, Adm'r,* 51 Mo.

304, is much like this case, where the court says: "Notice was given to the administrator on the 14th of July 1868, that the note would be presented for allowance at the next October term of the probate court. But at that term the plaintiff did not appear, no presentation was made, and no steps were taken in the matter. A new notice was given, that the demand would be presented for allowance at the April term 1869, which was served on the 2d of April in the same year, at which term the cause was submitted to the court, and judgment was rendered for the defendant. Here the offer was to prove that *the claim was exhibited* within two years after the granting of letters. That is the time allowed by statute for proving up claims against an estate, but if the demand is barred by the general provisions of the statute, *before it is presented,* it was never intended to graft this on the statute as an extension of time. The first notice must be wholly disregarded, *as no attempt was made to proceed under it,* and the second notice was not given till after ten years had gone by, and the statute, therefore, is a complete protection." So in the case at bar, assuming § 84 to have been "substantially complied with" in 1871, or 1872, yet the claim *was not presented* to the probate court until 1875, and in the meantime both the general and the special statutes had run against it.

2. In the second place, plaintiff in error insists, "that the administrator has promised in writing to pay this claim; and in the case of the last note, at least, before the five-years limitations had run; and has by that means bound the estate he represents to pay the claim." But a cursory perusal of the record will convince the court that no such promise was ever made. The counsel for Hanson say, it seems to them "beyond any question," there *was* one; but as I read the testimony there is nothing approaching to a compliance with the requirements of § 24 of the civil code. An acknowledgment or promise, to take a case out of the statute of limitations, must be direct and unconditional; or if contingent, it must appear that the contingency has happened. 7 Kas. 297; 41

Mo. 264; 47 Mo. 99; 16 Ohio St. 498. As to the letters, see 8 Metc. (Mass.) 432; 1 Dillon, 418; 47 Mo. 99, *supra;* 41 Penn. St. 482. When an administrator says he has not funds to pay a claim, he does not thereby acknowledge it; 12 Wheat. 565; nor by admitting its original justice; 8 Cranch, 72.

3. But even if the administrator had made such a promise or acknowledgment, as would have satisfied § 24 of the code, still it would have been void for want of power in him to make it. An administrator, under our statute, has no authority to make any such acknowledgment or promise. This court held, in *Brown v. Evans*, 15 Kas. 88, that an "estate may be held liable for promises made by the administrator where in law he has a right to make such promises, or where in law it is his duty without a promise to do just what he has promised to do." But our statute confers no power on an administrator to take a claim out of the statute of limitations by a new promise or acknowledgment under § 24 of the code; and it is not, in this state, the duty of an administrator to pay such a debt until it has first been duly established by the probate court. 58 Mo. 90, 95; Angell on Lim., §§ 266–273; 1 Hen. & M. (Va.) 563; 7 Conn. 172; 15 Me. 360; Redfield on Wills, 269, 288, 291.

The opinion of the court was delivered by

BREWER, J.: This was an action begun on the 5th of April 1875, in the probate court, under sections 91 to 94 of the executors-and-administrators act, (Gen. Stat. 450,) to "establish a demand," based on two notes of this tenor:

$367.  CHARLESTON, N. H., DEC. 20th, 1866.

For value received, we promise to pay to John J. Hanson, or his order, Three Hundred and Sixty-seven Dollars, on demand, with interest.  HANSON & TOWLE.

$500.  WILLIAMSBURG, KANSAS, May 20th, 1869.

For value received, I promise to pay to John J. Hanson, or order, Five Hundred Dollars, on demand, with interest.

SERGEANT HANSON.

To both notes the defendant Towle pleaded, first, the gen-

. eral statute of limitations, (Gen. Stat. 633, code, § 18, subdv.
1,) and second, the special statute (id., 452, § 106.)   Sergeant
Statement of          Hanson came to Kansas on the 1st of November
facts.              1868, and resided here thenceforth continuously
until his death, which occurred August 27th 1871.   Towle
was appointed his administrator, and gave bond as such, Sep-
tember 7th 1871, and on the 13th of said month published
the notice of his appointment as required by law.   As already
stated, this demand was not presented to the probate court
for allowance until April 5th 1875.   That tribunal held it
barred, and the district court, on appeal, decided the same
way.

As both the notes are payable *on demand*, (Angell on Lim.,
§ 95,) the general statute began to run against the first one
1. Statutes of          the day Sergeant Hanson came to Kansas, Nov.
limitation.              1st, 1868, and (allowing seventeen days for the
interval between his death and the appointment of Towle
as administrator,) it was barred Nov. 18th 1873; and the
second note was extinguished by the same statute on the 8th
of June 1874, five years and seventeen days after its date.
And in the absence of the *general statute*, both notes would
have been barred by section 106 of the executors-and-admin-
istrators act, on Sept. 14th, 1874, three years after Towle's
Secs. 106 and 84,     appointment.   But to evade these statutes, the
ch.37, construed.   plaintiff in error contends, "That the claim was
exhibited in *substantial compliance* with section 84 of the
executors-and-administrators act in November 1871, and con-
sequently before any question of limitation could arise."
Conceding that the evidence discloses full compliance with
this section — though of this there is grave doubt — and still
the bar of the statute is not removed.   The section provides
for exhibiting a claim against an estate, and says that certain
things being done the claim shall be considered as "legally
exhibited."   But what is implied by this expression? and
what is the purpose of the section?   Nothing more than that
the representative of the estate has been legally informed of
the existence of the claim, and that the claims may be classi-

fied for payment in accordance with the provisions of section 80. By that section priority of payment is (within certain limits) given according to priority of exhibition, with the design doubtless of inducing a speedy presentation of claims, and an early settlement of the estate. By section 85, the administrator is required to keep a list of claims thus exhibited, and return it to the court with each annual settlement. But a mere notice from a creditor to a debtor, or the representative of a debtor, of the existence of a claim, ought not to stop the running of the statute. At least it should not be given that force without express direction of the legislature. Ordinarily it requires some act or conduct of the

Exhibiting a claim, is not commencing a suit.

debtor to stop the statute. Nor is the exhibition of a claim under said section 84 in any sense the commencement of an action. Sections 91 and 92 provide for the mode for commencing actions in the probate court to establish claims; and the ordinary procedure of petition and summons obtains in commencing such actions in the district court. The claim, though exhibited, may never be placed in suit. If under fifty dollars, the administrator is expressly authorized to pay it without suit or allowance; (Sec. 90; *McKinzie's Adm'x v. Hill, Adm'r*, 51 Mo. 304.)

Again, this exhibition is only claimed to have been made in 1871, and this action was not commenced in the probate court until April 1875, more than three years after the

2. Sec. 106 of ch. 37, applies to suits in both courts.

alleged exhibition as well as the appointment and qualification of Towle. But section 106 reads: "No executor or administrator after having given notice of his appointment as provided in this act shall be held to answer to the suit of any creditor of the deceased unless it be commenced within three years from the time of his giving bond." Counsel would limit the application of this section to suits in the district court; but the section expresses no such limitation. The word "suit" is general, and includes proceedings to establish claims in the probate, as well as the district court. 2 Bouv. Law Dict

p. 558.   Nor does there seem to be any good reason for a limitation solely upon actions in the district court.   If commenced in the probate, the action can be taken on appeal to the district court, so that unless this section applies to both courts, it practically affects neither.   But the language of the section is general, and we may not interpolate any restriction.   *Gilbert, Adm'r, v. Little, Adm'r,* 2 Ohio St. 156.

In the second place the plaintiff in error insists "that the administrator has promised in writing to pay this claim; and in the case of the last note, at least, before the five-years limitation had run; and has by that means bound

3. Debt barred; contingent promise to pay.

the estate he represents to pay the claim;" and counsel refers us to "Towle's letters and evidence, and the deposition of Hanson."   The testimony does not warrant quite so broad a statement.   It does not disclose an absolute promise.   Hanson testified:

"I very frequently urged said Towle, by letter, to pay my claims; and said Towle in several letters to me, in reply, wrote that he would pay *as soon as the money could be realized* from the assets of my brother.   These letters I have made search for among my papers, but fail to find them."

And Towle testified thus:

"I never promised to pay these notes unless their allowance by the probate court should be procured first, and the demand thus be legally established against Sergeant Hanson's estate."

The court having found generally for the defendant in error, the testimony of Towle must, so far as there is any conflict, be accepted as correct.   And all that can be said from the entire testimony is, that there was a promise to pay upon certain conditions.   Now before such a promise can be taken advantage of the conditions must exist.   *Green v. Goble,* 7 Kas. 302.   But the conditions never were complied with.   Hence the plaintiff in error can take nothing by reason of the promise.

Certain letters of Towle to Hanson were however offered in evidence, in which were several references to these notes.

**4. Acknowledgments to prevent bar of statute.** Neither of these was written before the bar of the statute had run against the first note, and only two before the second was also barred. The first of these two letters contained this language:

"Your other note of five hundred dollars Sergeant told me of in his lifetime. I will attend to them both as soon as possible."

And in the other —

"In reply to your last will say, I have no idea that you will allow amount due you to go unpaid, and as far as I am concerned have no disposition to do otherwise. I had forgotten you had a note that matured so soon. Even if I had not I could not have raised the amount to have paid it unless I foreclosed the mortgage on notes matured, against the advice of legal men. Money is tight, and but little land is changing hands in this country, or has since early spring. Land if put up under the hammer would not bring in cash or short-time notes more than one-half its real value. I have advertised the farm at private sale, and shall find a customer if possible this fall, and shall foreclose mortgage on notes matured in the spring, if not paid. The parties are very anxious to meet them, and seem to think they will be able sometime this winter or the coming spring. I have not raised money enough at any one time to meet your note, except at time of public sale; that was used to deed the claim, and this was to be done the first of anything. If you will have an instrument of writing made that will be satisfactory to you, until the money is raised, I will sign it. This is the only alternative except to enter the matter in court. It is impossible to entertain the matter in any other light."

Is there in these statements sufficient to avoid the bar of the statute? We think not. A mere reference to the indebtedness, although consistent with its existing validity, and implying no disposition to question its binding obligation, or a suggestion of some action in reference to it, is not such an "acknowledgment" as is contemplated by the statute. This must be an unqualified and direct admission of a present-subsisting debt on which the party is liable, and which he is willing to pay. *Bell v. Morrison*, 1 Peters, (U. S.) 351; *Carr's Adm'rs v. Hurlburt's Adm'rs*, 41 Mo. 264; *Chambers v. Rubey*, 47 Mo. 100; *Barlow v. Barner*, 1 Dillon, 418; *Chestnut*

19—19 KAS.

*v. McBride*, 1 Heisk. (Tenn.) 389; *Grey v. McDowell*, 6 Bush. (Ky.) 475; *McClelland v. West*, 59 Penn. St. 487; *Wilcox v. Williams*, 5 Nev. 206; *Swinton v. Clark*, 65 North Car. 525.

So far as the admissions and statements made in the subsequent letters, it may be that some of them are within the above rule, and must be held to be acknowledgments within the statute. But another difficulty arises as to them. They were made by the administrator after the claims had become barred. There is considerable conflict in the authorities as to the power of an administrator to revive by acknowledgment or promise a claim once barred. Without entering into any discussion of these authorities, we express our concurrence with those that hold that he has no such power. He has no personal interest in the estate. He is not the "party to be charged thereby." His powers and duties are very fully prescribed by statute, and nowhere is there anything which would seem to imply a power to cast upon the estate the burden of a debt from which it had once been legally discharged. See as authorities, *Thompson v. Peters, Adm'r*, 12 Wheat. (U. S.) 565; *Peck v. Botsford*, 7 Conn. 176; *Fritz v. Thomas*, 1 Whart. (Penn.) 66; *County v. Harbison, Adm'r*, 58 Mo. 90; *Sevier v. Gordon*, 21 La. An. 373; *Huntington v. Babbitt*, 46 Miss. 528; *Seig v. Acord*, 21 Grat. 365.

The judgment will be affirmed.

All the Justices concurring.

*5. Administrator no power to revive debt once barred.*