SALT LAKE TRANSFER CO. v. SHURTLIFF et al.

No. 5353. Decided March 20, 1934. (30 P. [2d] 733.)

*H. S. Tanner*, of Salt Lake City, for appellants.

*Ingebretsen, Ray & Rawlins*, of Salt Lake City, for respondent.

FOLLAND, J.

This is an action on two promissory notes against D. R. Shurtliff as maker and John Schweberger and Joseph Weidner as indorsers. The complaint filed August 15, 1931, alleged the execution and delivery of the two notes dated January 1, 1918, payable on demand; that the notes were duly presented for payment and demand made on the maker on or about January 2, 1919; that payment was refused and notice of dishonor served and demand for payment made on the indorsers the next day; that time for payment was extended from year to year upon payment of interest by the maker, at the request of the maker and the indorsers; that interest was paid to January 1, 1929; and that by their acknowledgments of the obligation of the notes the defendants Schweberger and Weidner have at all times waived demand, presentation, and notice of dishonor. The defendant Shurtliff failed to answer and judgment was taken against him after default entered. He did not appeal. The defendants Schweberger and Weidner by answer admitted the execution and delivery of the notes as alleged, denied presentation to the maker and notice to them of dishonor, and alleged that they had been released from liability on the notes, and that the action was barred by Comp. Laws Utah 1917, § 6466, subd. 2 (Rev. St. 1933, 104-2-22, subd. 2). The court after trial found the issues in favor of plaintiff and against defendants for the principal of the notes, interest from January 1, 1929, attorney's fees and costs. De-

fendants Schweberger and Weidner appeal and assign error that the findings are not supported by but are contrary to the evidence, and that the conclusions of law and judgment are not supported by the findings.

The evidence on some points is in sharp dispute. Appellants testified that no notice of dishonor was given or demand made on them or either of them to pay the notes, and that they were not informed that the notes were unpaid until some time in the year 1927, about nine years after their execution and delivery; that they thereupon served notice in writing upon plaintiff that they "would not be responsible for the obligation of the maker of the notes and that they would not be further liable for their endorsement of said notes on account of the unreasonable delay of plaintiff in bringing action against the maker." Respondent's testimony was that demand had been made and the notes duly presented for payment to the maker on January 2, 1919, that the maker failed and refused to pay, and that notice of such presentation, demand, and dishonor was served verbally on the indorsers the next day and demand made of them for payment, that the maker and indorsers agreed the time for payment should be extended one year on payment of interest by the maker and that similar presentation, demands, and notices were made each year thereafter and similar extensions of time requested and granted until the year 1929; that no part of the principal had been paid but that interest had been paid to January 1, 1929. The following letter dated October 8, 1930, was, by undisputed evidence, shown to have been received by Geo. A. Sims, one of the plaintiffs, from the defendant Schweberger:

"I have just received a copy of the letter written to Mr. Shurtliff, and I am very sorry to hear that he has not even paid the interest. I will be home for Christmas and if he hasn't paid by that time, I will have to pay the interest myself and see what can be done. I would appreciate hearing what he answers to your letter and am still in hopes that we can do something to get him to take care of this matter.

"I thought your father had such a good influence with him working

in the church with him all the time, that he might be able to make him take care of his obligations; but I can see that it is now up to me to see what pressure I can bring to bear.

"Thanks for your note and with best personal regards, I am,"

The court made findings that presentment to and demand on the maker had been made and payment refused, that notice of dishonor had been duly given to the indorsers; that it had been agreed by the parties to the notes that they would be, remain, and stand as security continuously for the payment of the principal sums therein so long as interest was paid annually; that by reason of the acknowledgments made in writing by the defendants Schweberger and Weidner they had waived presentment, demand, and notice of dishonor, and that the cause of action was not barred by the statute of limitations.

This being a law case and the evidence in conflict we are not authorized to disturb the court's findings of fact with respect to presentment, demand, and notice of dishonor. There is sufficient competent evidence in the record to support such findings. In the face of such a finding we are not disposed to discuss the question of whether or not there was a waiver by the defendant indorsers of due presentment, demand, and notice of dishonor. Likewise, it is unnecessary to discuss whether presentment was made within a reasonable time, since the full statutory limitation period had run, whether time be counted from the date of the notes or date of demand.

The court found there was an extension of time, or postponement of the due date from year to year agreed to by all the parties on payment of interest then due by the maker of the notes. There is lacking evidence of such certainty, mutuality, and consideration as are necessary to complete a valid agreement for an extension of time. 8 C. J. 426. The only consideration involved was payment of interest already due. This is not a sufficient consideration to support an agreement for an extension of time of payment of the notes. 8 C. J. 435.

The remaining question, which is determinative of the case, is whether appellants made such acknowledgment in writing of an existing liability debt or claim as to deprive them of the defense of the statute of limitations. In this state a right of action on a written instrument is barred in six years. Comp. Laws Utah 1917, § 6466 (R. S. Utah 1933, 104-2-22). Ordinarily on a demand note the statute of limitations commences to run from the date thereof. 37 C. J. 845. But whether measured from this date or the date of demand, January 2, 1919, the statutory time had fully run prior to the writing of the letters relied on by respondent to revive the cause of action or toll the statute. About three years prior to the commencement of the action Schweberger and Weidner each wrote to respondents to inform them they would no longer be liable as indorsers on the notes. The exact language of these letters is not before us as neither the original nor a copy of either letter was produced. Appellants alleged and the court found that such letters notified respondents, as to each note, that they (appellants) "would not be responsible for the obligation of the maker of said note and that they would not be further liable for the endorsement of said note on account of the unreasonable delay of the plaintiff in bringing action against the maker of said note, to wit: D. R. Shurtliff." The finding is fully supported by pleading and testimony of appellants. The other writing relied on is the letter of October 8, 1930, copied above, signed by John Schweberger. This letter, of course, could bind only Schweberger as it was not signed by Weidner.

Comp. Laws Utah 1917, § 6489 (R. S. Utah 1933, 104-2-45), provides as follows:

"In any case founded on contract, when any part of the principal or interest shall have been paid or an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same shall have been made an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby. When a right of action

is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense."

This section was taken from Kansas (*O'Donnell* v. *Parker*, 48 Utah 578, 160 P. 1192) and became part of our law in 1897, thereby amending or superseding Comp. Laws Utah 1888, § 3165, which had been in force for many years prior thereto. This latter section was similar to the provision in the Codes of California and many other states on the same subject. The section before amendment merely recognized the rule of the common law with respect to acknowledgment or promise to toll the statute or revive a stale claim but required that the acknowledgment or promise to be effective must be in writing signed by the party to be charged thereby. This section had been construed and applied to the effect that the acknowledgment or promise gave rise to a new contract on which the action should be brought rather than on the old contract (*Boukofsky* v. *Powers,* 1 Utah 333; *Anthony & Co.* v. *Savage,* 2 Utah 466; *Gruenberg* v. *Buhring,* 5 Utah 414, 16 P. 486), and that recovery should be had, if at all, on an action brought on the new promise initiated within the statutory period after such new promise (*Ireland* v. *Mackintosh,* 22 Utah 296, 61 P. 901). Under this construction the original debt is a sufficient consideration to support the new contract, and the acknowledgment, unless accompanied by an express promise to pay, must be a distinct admission of the obligation of the debtor to pay the debt. *Kuhn & Brother* v. *Mount,* 13 Utah 108, 44 P. 1036; *Ireland* v. *Mackintosh,* supra. An acknowledgment, when there is no express promise to pay, in order to be sufficient to create a new contract must necessarily be one that not only admits the existence of the debt but from which may be implied a promise to pay. 37 C. J. 1096-1104.

By the adoption of the statute of 1897, Comp. Laws Utah 1917, § 6489, a different rule came into being. This statute is satisfied if there be in writing either an acknowledgment of an existing liability, debt, or claim,

or a promise to pay. It is not necessary that there be both an acknowledgment and also a promise to pay. *Weir* v. *Bauer,* 75 Utah 498, 286 P. 936.

Our statute having been taken from Kansas it will be helpful to refer to the Kansas decisions for a construction of the phrase "acknowledgment of an existing liability, debt, or claim." The earliest of the Kansas cases, *Hanson* v. *Towle,* 19 Kan. 273, established the rule that the acknowledgment must be an unqualified and direct admission of a present subsisting debt on which the party is liable and willing to pay. The words "and willing to pay" were expressly repudiated in *Elder* v. *Dyer,* 26 Kan. 604, 40 Am. Rep. 320, where the court had before it a letter written by a comaker of the note in litigation requesting the payee to "write him (the principal debtor) a sharp letter and demand of him an endorser there. I don't want to be held longer on the note." In holding that this was a sufficient acknowledgement to take the case out of the bar of the statute, the court said:

"No set phrase or particular form of language is required; anything that will indicate that the party making the acknowledgment admits that he is still liable on the claim that he is still bound for its satisfaction that he is still held for its liquidation and payment, is sufficient to revive the debt or claim; and there is no necessity that there should also be a promise to pay the same, either express or implied. Of course we know that an acknowledgment of an existing liability on an honest debt or claim generally raises an implied promise or contract to pay the same; but whether it does or not, is not a question to be considered in this state. The statute says nothing about an implied contract or promise, and the action, if revived at all is not to be brought on the implied contract or promise but only on the original liability."

To similar effect is the case of *Harms* v. *Freytag,* 59 Neb. 359, 80 N. W. 1039, decided on the authority of *Elder* v. *Dyer,* supra.

The later Kansas cases follow the rule that nothing short of a distinct, direct, unqualified, and intentional admission of a present, subsisting debt on which a party is liable will

be sufficient to take the obligation out of the statute and start it running anew. The following quotations from subsequent Kansas cases support this view:

"Statutes of limitation are statutes of repose. One seeking to evade their result must bring himself within the terms of the statute which raises the bar. A writing which is no more consistent with the claim that an acknowledgment was intended than with the claim that it was not, is not sufficient to remove the bar. It must be 'an unqualified and direct admission of a present subsisting debt on which the party is liable.' Tested by this rule we see little ground for the contention that the writing quoted above is sufficient. It admits that a certain mortgage was made by the writer, but it is only by a very remote inference that any obligation now exists thereon. The letter would be as explainable under the hypothesis that the writer was denying the liability as with one that she was admitting it.

"We are cited to the cases of *Elder* v. *Dyer*, 26 Kan. 604, 40 Am. Rep. 320, and *Pracht* v. *McNee*, 40 Kan. 1, 18 P. 925, as authority for holding the letter in the case at bar sufficient to stay the statute. We think these cases both go to the extreme verge in their conclusions, but it will be noted neither of them attack the rule laid down in *Hanson* v *Towle*, supra. In a large degree every case must stand by itself but in the construction of the language used in any case we must not lose sight of the explicit language of the statute, and the sharp and unequivocal language of the leading cases which we have cited." *Haythorn* v. *Cooper*, 65 Kan. 338, 69 P. 333.

"These writings, shown by other testimony to relate to the notes in suit, sufficiently acknowledge an indebtedness at one time, but do not acknowledge a subsisting liability. On the contrary they allege a payment, and by implication deny further liability. The statute provides that an acknowledgment of an existing liability debt, or claim, in writing, signed by the party to be charged, shall remove the bar. Civ. Code, § 24. Construing this statute, this court has held that this acknowledgment must be an admission of a present subsisting debt." *Hawkins* v. *Brown*, 78 Kan. 284, 97 P. 479, 481.

"The phraseology of an acknowledgment is not important, but to remove the bar something more than vague general impressions of a desire and purpose to pay money to another is necessary, and nothing short of distinct, direct and unequivocal admission of a present, subsisting liability is sufficient. Beaubien's letters contain expressions of a desire to help Hamilton and of a purpose to raise and pay money to him and they also contain an expression or regret that he has not been able to do his duty towards Hamilton, but an examination of the letters shows that they fall short of an admission from

which an acknowledgment such as the statute contemplates may be implied." *Hamilton* v. *Beaubien*, 92 Kan. 944, 142 P. 245, 246.

"In the letter of the defendant he says in effect that he is sorry that he is unable to pay any on his account at the present time, and adds: 'I thank you for past favors and hope I may be able to pay you soon.' The character of the account or what were the past favors, the letter itself does not specifically disclose. It does no more than to make a general reference to an indebtedness, and under the cases cited it cannot be regarded as a distinct and unequivocal admission of a present existing debt upon which the defendant is liable, and is not such an acknowledgment as is contemplated by the statute." *Corbett* v. *Hoss*, 98 Kan. 290, 157 P. 1195, 1196.

See, also, *Miles* v. *Hamilton*, 106 Kan. 804, 189 P. 926, 19 A. L. R. 276; on rehearing 107 Kan. 187, 190 P. 430, 19 A. L. R. 276; *Wichita Sanitarium* v. *Bierschbach*, 136 Kan. 84, 12 P. (2d) 806. The Supreme Court of the United States in *Ft. Scott* v. *Hickman*, 112 U. S. 150, 5 S. Ct. 56, 63, 28 L. Ed. 636, in passing on the Kansas statute, said:

"The settled doctrine in Kansas, and the weight of authority elsewhere, is that statutes of limitation are statutes of repose, and not merely statutes of presumption of payment. Therefore, to deprive a debtor of the benefit of such a statute by an acknowledgment of indebtedness, there must be an acknowledgment to the creditor as to the particular claim, and it must be shown to have been intentional. *Roscoe* v. *Hale*, before cited (7 Gray [Mass.] 274). 'An acknowledgment of an existing liability, debt, or claim,' within the meaning of the Kansas statute, implies a meeting of minds, the right of the creditor to take what is written as an acknowledgment to him of the existence of the debt, as well as the intention of the debtor, as deduced from the contents of the writing and all the facts accompanying it, to make such acknowledgment."

Statutes of limitations declare the policy of the state, and must be fairly interpreted and impartially applied by the courts. The debtor's right to be not harassed upon a stale debt is as absolute as the creditor's right to collect on a fresh one. The acknowledgment necessary to start the statute anew must be more than a hint, a reference, or a discussion of an old debt; it must amount to a clear recogni-

tion of the claim and liability as presently existing. In re *Gilman, Son & Co*. (D. C.) 57 F. (2d) 294.

Testing the letters of appellants by the standards set up in these cases, can it be said that they fill the requirements of an intentional acknowledgment of an existing debt on which these defendants admit they are liable? We think they do not meet the test. In the letter written by Mr. Schweberger there is not anything that admits a present subsisting debt for which he is liable unless it be the statement with respect to interest. The balance of the letter is a mere reference to the liability of Mr. Shurtliff with a suggestion of pressure to be brought to bear on him to have him take care of his obligation. The reference to interest is not a direct, intentional, or voluntary offer to pay the interest but a mere statement that he will be required to pay it. We think this cannot be construed to be an express acknowledgment that the principal sum of the notes is a subsisting debt which Mr. Schweberger is liable to pay.

We come next to the letters written by each of the appellants. They are separate letters but to the same purport. There is not anything in the language which would give rise to a promise to pay or a willingness to pay, if such were necessary. The expressions and implications are to the contrary. The language is, they would not be responsible for the obligation of the maker of the notes and that they would not be further liable for their indorsements on account of the unreasonable delay of plaintiff in bringing action against the maker. The statement that they would not be further liable is consistent with a constuction that they acknowledge that they are now liable but intend not to be liable in the future, but it is equally or even more consistent, when read in connection with the last phrase as to the unreasonable delay, with a construction to the effect that they are not liable as indorsers because of the unreasonable lapse of time which has made effective the bar of the statute of limitations, and conse-

quently they are no longer liable. Where the language is consistent with either one of two theories, it cannot be said to be a direct, distinct, and unqualified admission of a present, subsisting debt on which the writers are liable. The written acknowledgment held sufficient to bar the statute in the case of *Elder* v. *Dyer*, supra, was said in *Haythorn* v. *Cooper*, supra, to be such that the court had gone "to the extreme verge in their conclusions." That acknowledgment was not, however, qualified as is the statement of these appellants. There it was said merely, "I do not want to be held longer on that note"; while here the statement is that they would not be further liable for their indorsement on the notes on account of the unreasonable delay in bringing action against the maker. In other words this amounts to a statement of the fact that by reason of the delay they were discharged as indorsers. We think the bar of the statute was complete as against the liability of the appellants.

The judgment is reversed and the cause remanded to the district court of Salt Lake county with directions to grant a new trial. Costs to appellants.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.