269 P.2d 867

**BECK**

v.

**DUTCHMAN COALITION MINES CO.**

No. 8011.

Supreme Court of Utah.

April 26, 1954.

Reid W. Neilsen, Elias Hansen, Salt Lake City, for appellant.

Richard L. Bird, Jr., Dan S. Bushnell, Salt Lake City, for respondent.

WOLFE, Chief Justice.

Action by the appellant, plaintiff below, to recover $10,000 for legal and other services which he rendered the respondent corporation, defendant below, during a thirty year period extending from 1921 to 1951. The respondent resisted the action on the ground that it had paid the appellant for all his services except the sum of $1,000, and that his action was barred by the four-year statute of limitations on actions to recover on contract, Sec. 78-12-25, Utah Code Annotated 1953. From a judgment entered on a jury verdict in favor of the appellant for $1,500, he prosecutes this appeal contending that the court below did not correctly instruct the jury and that the verdict was so inadequate as to entitle him to a new trial. The respondent cross-appeals contending that the statute of limitations above referred to bars recovery of all but $100 of the judgment entered by the trial court.

The appellant testified that he was employed by the respondent in 1921 and had been its attorney continuously since that time; that at that time it was agreed that he would be liberally paid for his services when the respondent corporation had money sufficient with which to pay him, but that he would be reimbursed from time to time for expenses. Briefly stated, the appellant claimed he had rendered, inter alia, the following services to the respondent: made assessments on its stock; kept the minutes of the directors' meetings; drafted leases; conducted litigation; made about one hundred trips to the mine which is located in American Fork Canyon in Utah County in this state for various purposes, furnishing his own transportation; made many trips to Provo, the county seat of Utah County, to check the title records and for other purposes; secured prospective lessees, conducted them through the mine and negotiated leases with them; secured loans from the R.F.C. for one of the respondent's lessees; wrote about 600 letters on behalf of the corporation; did work in obtaining patents to the mine; and kept its general manager who lived in California apprised in all matters connected with the operation of the mine. In addition, the appellant claimed that his law office in Salt Lake City served as the office of the

respondent corporation in Utah and that he furnished it stationery, stamps, telephone and stenographic service. He testified that during the thirty year period he had received from the respondent as fees for himself only $350, plus 10,000 shares of stock in the respondent which were given to him so that he could serve as a director, and an additional 20,000 shares which were given him without his knowledge in about 1937 by the board of directors at a meeting held in Los Angeles, California, of which he received no notice. Estimates as to the value of the stock ranged from nothing to one cent per share.

By a special verdict the jury found that the reasonable value of all the unpaid nongratuitous services, legal and otherwise, rendered by the appellant for the respondent amounted to $1,100 during the period from August, 1921, to October 31, 1947; $300 during the period from Nov. 1, 1947, to March 24, 1948; and $100 from March 25, 1948, to March 24, 1952, when the appellant commenced this action; or a total of $1,500 during the thirty year period. The jury further found that it was the intention of the parties that the individual items of the account for services rendered by the appellant should be considered independently and not as a continuation of a related series, but that payment was to be made upon the happening of a contingency, which contingency occurred on September 11, 1947 at which time the respondent made demand for a statement from the appellant as to what it owed him.

Turning first to a consideration of the respondent's cross-appeal, it contends that the appellant can recover only for services rendered on or after March 25, 1948, which services the jury found to be reasonably worth $100, since he did not commence his action until March 25, 1952, and that recovery for services rendered prior to that date is barred by Sec. 78–12–25 providing for a four-year limitation on actions to recover on contract. The appellant claims that the running of the statute of limitations was tolled by an acknowledgment of the obligation made by the respondent's president on March 28, 1948.

Section 78–12–44, U.C.A.1953, provides:

"In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought within the period prescribed for the same after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby. When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense."

It will be noted that the above statute is worded in the disjunctive: "an acknowledgment of an existing liability to pay the debt, liability or claim, *or* any

promise to pay the same." (Italics added.) Unlike statutes in many states, an acknowledgment *and* a promise to pay are not both necessary. Weir v. Bauer, 75 Utah 498, 286 P. 936; 1 Williston on Contracts § 167. We pointed out in O'Donnell v. Parker, 48 Utah 578, 160 P. 1192, 1193, that our statute was taken from Kansas and that the Supreme Court of that state in Elder v. Dyer, 26 Kan. 604, 40 Am.Rep. 320, stated the following in regards to what constitutes a sufficient acknowledgment of an existing liability under the statute:

" 'No set phrase or particular form of language is required; anything that will indicate that the party making the acknowledgment admits that he is still liable on the claim, that he is still bound for its satisfaction, that he is still held for its liquidation and payment, is sufficient to revive the debt or claim; and there is no necessity that there should also be a promise to pay the same, either express or implied.' "

In Salt Lake Transfer Co. v. Shurtliff, 83 Utah 488, 489, 30 P.2d 733, 736, Mr. Justice Folland, speaking for this court, noted that later Kansas cases announce the rule that "nothing short of a distinct, direct, unqualified, and intentional admission of a present, subsisting debt on which a party is liable will be sufficient to take the obligation out of the statute and start it running anew." He stated that "The acknowledgment necessary to start the statute [running] anew must be more than a hint,

a reference, or a discussion of an old debt; it must amount to a clear recognition of the claim and liability as presently existing. In re Gilman, Son & Co. (D.C.), 57 F.2d 294."

■ Turning now to the instant case, we think a letter written by one Harry Holden, president of the respondent corporation, to the appellant on March 29, 1948, meets the above test and constitutes a sufficient "acknowledgment of an existing liability, debt or claim," to interrupt the *running of the statute of limitations* and start it running anew from that date. That letter reads as follows:

"Mr. Clarence M. Beck
"416 Felt Bldg.
"Salt Lake City, Utah

"Dear Clarence

"It has been nearly two years since I have been trying to get your bill for services on the Dutchman Coalition Mines Co. this I have been unable to do, your many promises to submit it have never been fulfilled.

"The Directors here feel that we should declare a small dividend but are reluctant to do so till all bill's are paid.

"We have gone over the work that you have done and the money we have paid you togeather [sic] with the Thirty Thousand shares of stock you received and feel that the enclosed check for One thousand dollars is a

very liberal one to compensate the payment for your services to this date.

"We will take it for granted that the cashing of this check constitutes your acceptance as payment in full for all services rendered."

"Sincerely
"Harry W. Holden /s/
"President
"Dutchman Coalition Mines Co."

 The above letter contains a clear and definite acknowledgment that the respondent presently owes the appellant for his services. The letter refers to the appellant's claim as a bill which the directors desired to pay presently in order to clear the way for the payment of a small dividend. It makes no difference that Holden expressed that he thought $1,000 was all that was due and owing since the statute is satisfied by the acknowledgment of a "claim" and does not require that the amount of the claim be acknowledged, or that the claim be liquidated. 1 Williston on Contracts § 188; 1 Corbin on Contracts § 214; Restatement of Contracts § 86, comment b. There was no offer or promise to pay anything over $1,000 but as has been heretofore pointed out, such a promise is not necessary under our statute. Respondent claims that Holden's letter was merely an offer to compromise a debt and refers us to cases collated at 12 A.L.R. 544 holding that an unaccepted offer to compromise a claim is not alone sufficient to toll or remove the bar of the statute of limitations. We have

no quarrel with the holding of those cases; offers to compromise can be and are often worded so as to admit of no acknowledgment of an existing liability and/or of an unconditional promise to pay the same. Each case must be determined largely on its own facts. We think Holden's letter contains an acknowledgment of an existing liability independently of the offer made in the third paragraph to settle the claim for $1,000. We thus conclude that the letter constituted a sufficient acknowledgment to toll the statute of limitations and start it running anew, and that the appellant having commenced his action within four years after the letter was written was not barred by the statute of limitations from recovering for all his unpaid services rendered to the respondent.

Turning now to the contentions raised by the appellant, he asserts that inasmuch as there had been an acknowledgment of his claim by the respondent within four years prior to the commencement of his action, the lower court erred in requiring the jury to find per the special verdict certain facts which could have no bearing on the case unless the statute of limitations barred all or a part of the appellant's action. Specifically, he complains that the jury was required to find whether the last work performed by the appellant was completed before or after March 25, 1948; whether the parties intended that the individual items of account between them for services rendered by the appellant should be con-

sidered independently or whether they intended them to be a continuation of a related series, with payment due only at the end of the series, and whether the respondent terminated the services of the appellant in 1947. Appellant urges that the only issues in the case were (1) what was the reasonable value of the appellant's services during the thirty year period he served the respondent, and (2) what amount had the respondent paid the appellant therefor; that the other questions of fact asked the jury above stated only served to confuse them and cast the intimation that the appellant might be at fault for not bringing his action sooner, leading the jury to award him only a fraction of the compensation to which he was entitled. He supports his argument by pointing out that after the jury had retired to deliberate, they returned into court and requested an explanation of the statute of limitations, which the court made orally.

■■ We agree with the appellant that the trial court erred in requiring the jury to resolve the questions of fact above enumerated since they were not issues in the case. But we are convinced that he was not in any way prejudiced thereby. It was a superfluous act which neither added nor detracted from the jury answer to the only vital question submitted to them: "what was the reasonable value of the appellant's unpaid services?" The jury answered that question, $1,500, and the trial court gave him judgment for that amount, apparently ruling as a matter of law that no part of the appellant's claim was barred by the statute of limitations. It would be pure conjecture on our part to hold that the submission of the superfluous questions in any way prejudiced the appellant's case. He concedes that the jury resolved those questions, in the main, favorable to him. We find nothing in the written instructions or in the oral explanation of the statute of limitations given to the jury which is susceptible of an intimation that the appellant might be at fault for not bringing his action sooner. There was no need, however, for the court's explanation of the statute of limitations to the jury since it was a matter of law which did not directly concern them, and by the court's own admission nothing that he could say to them in explanation of the statute of limitations could aid them in determining the several questions of fact submitted to them.

The appellant next asserts that the lower court abused its discretion in denying his motion for a new trial. The motion was made upon six grounds including the ground that the amount of the verdict was inadequate, appearing to have been rendered under the influence of passion and prejudice. He argues that the jury totally ignored expert testimony adduced by him that the services which he rendered to the respondent over the thirty year period were reasonably worth $12,000 or more, and that the $1,500 which the jury awarded

him, coupled with the $350 which he admitted receiving from the respondent as fees for himself, gives him only a small fraction of the reasonable value of his services.

Trial courts have wide latitude in granting or denying motions for new trials. Considering the evidence which the respondent adduced, which evidence the jury was entitled to believe, we cannot say as a matter of law that the court below abused its discretion in denying the motion. One of the appellant's expert witnesses who testified that all of the services which the appellant rendered the respondent over the thirty year period were reasonably worth $12,000, further testified in breaking down the figure that the appellant's services in handling an ejectment suit and patenting four mining claims were reasonably worth at least $6,000, and that his services in dissuading a minority stockholder from bringing a stockholders' suit against the corporation were reasonably worth at least $2,000. Yet respondent's president testified that the appellant had been paid in full for his services in the ejectment suit and patenting the claims and that he had not requested the appellant to dissuade the minority stockholder from commencing an action. Evidence was also introduced that the appellant actually did not attempt to stave off the stockholders' suit. Respondent further adduced testimony that the appellant had been paid in full for his services up to May, 1937, when 20,000 shares of treasury stock were issued to him; that as a director in the respondent he performed certain non-legal work for which it was never contemplated he would be paid; that certain services for which appellant sought recovery were not rendered for the respondent but for other parties and that the appellant had never notified the respondent of his intention to look to it for payment. The appellant's expert witnesses who testified that his services were reasonably worth $12,000 or more based their opinions solely upon the appellant's direct testimony. They did not consider in formulating their opinions the respondent's evidence that certain services for which the appellant sought recovery were never performed or were never intended to be compensable.

The trial judge stated in the record that he thought the verdict was inadequate, and the appellant argues that he refused to grant a new trial only because he was laboring under a misconception of the law as to when he could grant a new trial upon the ground of inadequate damages. We cannot review the trial court's thinking on the matter. He refused to grant the new trial, and regardless of his reasons for so doing, we cannot say under the evidence that he abused his discretion.

Lastly, appellant complains of the trial court's refusal to submit a certain requested instruction to the jury. Appellant having failed to make an objection to

the refusal, we will not review that matter. Rule 51, Utah Rules of Civil Procedure.

The judgment below is affirmed. Each party to bear his own costs.

McDONOUGH, CROCKETT and WADE, JJ., concur.

HENRIOD, Justice (concurring).

I concur, only because the jury found as it did on facts which, viewed in a light most favorable to defendant, reasonably could justify the verdict. If the jury did not believe the plaintiff, such a result could be reached. For example, the jury could have believed defendant's evidence that plaintiff had received more compensation than he testified to or of which he had a record. Knowing the plaintiff and his reputation in the community, had the writer been a juror, he would have believed the plaintiff and hence would have concluded that, based on his testimony, the amount awarded, amounting to about $5 per month, was ridiculous, and would have presented a striking contrast in opinion as to what a lawyer's services are worth today as compared to those of 1897,[1] where we held reasonable a $3,000 fee for attorneys whose "employment extended over about eight months, and much of their time was taken during the first two months in the investigations they made, with the assistance of an expert accountant and the receivers",

and where "a number of suits were instituted that were not tried" and "but comparatively little time was occupied in court," where "no difficult trial appears to have occurred, and the results to the parties to the litigation were moderate." But the writer and this court were not and cannot pretend to be the jury in this case, and our personal feelings in any such matter cannot exceed the four corners of the record made.

---

1. Geyser Min. Co. v. Bank of Salt Lake, 16 Utah 163, 51 P. 151, 152.