2016 UT App 46

# THE UTAH COURT OF APPEALS

ROBERT E. OLSEN, MARIE T. OLSEN, CARL A. JACOBSON, AND
JENNY L. JACOBSON,
Appellants and Cross-appellees,

*v.*

FAIR CO.,
Appellee and Cross-appellant.

Opinion
No. 20140140-CA
Filed March 10, 2016

Fifth District Court, St. George Department
The Honorable Jeffrey C. Wilcox
No. 120500142

Shane Clifford, Attorney for Appellants

Stevan R. Baxter, Attorney for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which
JUDGE KATE A. TOOMEY and SENIOR JUDGE JAMES Z. DAVIS
concurred. [1]

ROTH, Judge:

¶1    Robert E. Olsen, Marie T. Olsen, Carl A. Jacobson, and
Jenny L. Jacobson (collectively, Buyers) appeal from the district
court's grant of summary judgment in favor of Fair Co. (Seller).
Seller cross-appeals the district court's denial of its request for

---

1. Senior Judge James Z. Davis began his work on this case as a
member of the Utah Court of Appeals. He retired from the court,
but thereafter became a Senior Judge. He completed his work on
this case sitting by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 11-201(6).

attorney fees. We affirm both the district court's grant of summary judgment and its denial of an attorney-fees award.

BACKGROUND

¶2     Buyers purchased property from Seller in LaVerkin, Utah on January 10, 2003 for $310,268. The property included a number of mobile homes. Seller financed $210,000 of the purchase price, with the loan evidenced by a note (the Note) from the Buyers, secured by a trust deed on the property. The Note set monthly payments at $2,095, to begin February 14, 2003, and to continue through September 14, 2015. The Note also stated that "for each $5,000 of note debt reduction," Seller "agree[d] to release and provide clear title to one mobile home." Buyers made payments in accordance with the Note and received four of the eleven titles between February 14, 2003 and April 14, 2004. Despite receiving additional payments, Seller failed to provide the next mobile home title in accordance with the Note.

¶3     At some point in 2005, Buyers sent Seller a letter stating, "With this payment it is past time for your company to release mobile home title number 5 and now time to release title number 6. I would appreciate them very much." Buyers received the following response in September 2005 from Seller: "I have enclosed titles to number 1 and 16. You were sent the title for Number 6 on August 18, 2004. On number 5 we do not have a title, it was included with the property." Over the next several years, Buyers' payments became consistently late and Seller did not release any additional mobile home titles. Apparently referring to Seller's failure to provide mobile home titles, Buyers informed Seller in May 2010 that they "would no longer make payments" due to Seller's breach of contract, and by 2011 Buyers had stopped making payments altogether.

¶4     In November 2011, Seller commenced collection efforts against Buyers by recording a notice of default on the trust deed,

thereby initiating non-judicial foreclosure proceedings. That same month, Seller's attorney also sent a letter to a third party stating that Seller had "recently obtained clear title to the last unit . . . of the mobile home park." On February 22, 2012, Buyers filed a complaint against Seller alleging, among other things, breach of contract. Buyers asserted that Seller had failed to fulfill its obligation under the Note to transfer titles to the mobile home units. They also alleged that the missing titles significantly lowered the market value of the property, which they had sold "in June or July of 2011" at what they claimed to be a much lower price than they could have obtained had they received the mobile home titles prior to the sale.[2] On February 28, 2012, Buyers also filed a motion for a temporary restraining order, halting the foreclosure sale of the property.

¶5    In June 2013, Seller filed a motion for summary judgment. The district court heard argument on the motion in December 2013 and entered an order granting summary judgment in favor of Seller the following month. In the summary judgment order, the district court determined that the six-year statute of limitations for Buyers' breach of contract claim began running on May 14, 2004—the date Seller first failed to provide a mobile home title as agreed—and that the latest possible date the statute of limitations could have begun running was April 14, 2005—the date Buyers would have received the final mobile home title had Seller fully performed its obligations under the Note. The district court also determined that the statute of limitations had not been tolled by Utah Code section 78B-2-113, which restarts the statute of limitations on "[a]n action for recovery of a debt" in the event "a payment is made on the debt by the debtor." *See* Utah Code Ann. § 78B-2-113(1)(c) (LexisNexis 2012). Accordingly, the district court found that, because the statute of limitations barred any claim filed after April 14, 2011, at the latest, the court

---

2. After Buyers sold the property in August 2011, additional titles were transferred by Seller to Buyers.

determined that Buyers brought their breach of contract claim against Seller too late. In a subsequent order, the district court determined that "neither party was held in default" and therefore that Seller was not entitled to attorney fees. Buyers appeal the summary judgment in Seller's favor. Seller cross-appeals the district court's denial of its request for attorney fees.

ISSUES AND STANDARDS OF REVIEW

¶6    Buyers argue that the district court erred in granting summary judgment for three reasons: (1) it failed to "treat the trust deed note as an executory contract"; (2) it improperly calculated the date the statute of limitations began to run; and (3) it erroneously concluded that Utah Code section 78B-2-113 was inapplicable. We review "a summary judgment for correctness, giving no deference to the trial court's decision." *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56. "The *de novo* standard of review of summary judgment applies regardless of the nature (fact-intensive or not) of the underlying law governing the parties' rights." *Id.* ¶ 16.

¶7    Seller challenges the district court's denial of its request for attorney fees. "Under Utah law, attorney fees may be recovered if provided by contract or statute. If by contract, the award of attorney's fees is allowed only in accordance with the terms of the contract." *Faulkner v. Farnsworth*, 714 P.2d 1149, 1150 (Utah 1986) (per curiam) (citation and internal quotation marks omitted). Seller contends that it is entitled to attorney fees under the Note. "The interpretation of contract language" involving attorney fees "presents us with a question of law on which we need not defer to the trial court's construction but are free to render our independent interpretation." *Id.* (citation omitted).

ANALYSIS

I. Buyers' Appeal: Summary Judgment

¶8    All of Buyers' arguments hinge on the district court's determination that Buyers' claim against Seller for breach of contract—filed in February 2012—was filed after the appropriate statute of limitations had run and was therefore untimely. Neither party disputes that Utah Code section 78B-2-309, which provides a six-year statute of limitations for claims brought under a written contract, applies here. Utah Code Ann. § 78B-2-309(2) (LexisNexis 2012). Buyers first argue that their claim was timely because, in accordance with Utah Code section 78B-2-113, the applicable six-year period was tolled until 2011 when Seller delivered the final mobile home titles. Buyers next argue that if the district court had properly deemed the contract at issue executory, the six-year statute of limitations would not have started to run until November 2011, because, according to Buyers, Seller was still "working on" its end of the contract, making Buyers' February 2012 claim timely. Buyers' final argument is that if the statute of limitations began running on the date that the final mobile home title was due under the terms of the Note, the district court erred in determining that April 14, 2005, was the date on which the final title was due. Instead, Buyers contend that delivery of the final title was to be December 13, 2007, thus bringing their February 2012 filing within the six-year statute of limitations. We address each argument in turn.

A.    Application of Utah Code Section 78B-2-113

¶9    Utah Code section 78B-2-113 states, "An action for recovery of a debt may be brought within the applicable statute of limitations from the date: (a) the debt arose; (b) a written acknowledgement of the debt or a promise to pay is made by the debtor; or (c) a payment is made on the debt by the debtor." *Id.* § 78B-2-113(1). Buyers contend that Seller's "written

correspondence and eventual transfer of mobile home titles in 2011 served to bring [Buyers'] breach of contract claims 'within the applicable statute of limitations.'" (Quoting *id.*) And Buyers argue that Seller became a "'debtor'" under Utah Code section 78B-2-113 when Seller "became obligated to transfer something of value (i.e., title to mobile homes)." (Quoting *id.*) Buyers appear to be arguing that the correspondence and transfer of mobile home titles in or around August 2011 constituted "payment" or an "acknowledgement of the debt" under subsections (b) and (c) of the statute.

¶10    Seller counters that Utah Code section 78B-2-113 does not apply, because Buyers' breach of contract action was not an action to collect a debt. Buyers have not persuaded us otherwise. "'Debt' has been defined variously, but generally it is an obligation to pay a fixed and certain sum of money." *Bown v. Loveland*, 678 P.2d 292, 296 (Utah 1984). A "debt" is "usually a monetary sum" that is "owed to another." *Garner's Dictionary of Legal Usage* 249 (3d ed. 2011). While Buyers have pointed us to cases such as *Barnes v. Lehi City*, 279 P. 878 (Utah 1929), which states that "[t]he definitions of the word 'debt' are many, and depend on the context and the general subject with reference to which it is used," *see id.* at 884 (citation omitted), they have provided no authority supporting their claim that the obligation to provide a title in exchange for payment is the type of "debt" contemplated in section 78B-2-113. As a consequence, Buyers have failed to persuade us that the concept of "debt" referenced in section 78B-2-113 encompasses more than "an obligation to pay a fixed and certain sum of money," *see Bown*, 678 P.2d at 296, or that the principle set out in that statute applies more broadly to extend the statute of limitations for obligations of every kind, *see State v. Rincon*, 2012 UT App 372, ¶ 10, 293 P.3d 1142 ("When interpreting statutory provisions, we first look to the plain language of the statute. When construing a statute, words that are used in common, daily, nontechnical speech, should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage." (citations and

internal quotation marks omitted)); *see also Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 33, 267 P.3d 863 ("In interpreting statutory language, our primary goal is to give effect to the legislature's intent. To accomplish this goal, we begin by looking to the statute's plain language."). Accordingly, we are not persuaded that the district court erred in ruling that the statute of limitations was not tolled by Utah Code section 78B-2-113.

B.      Executory Contract

¶11     Buyers next argue that the district court's grant of summary judgment in favor of Seller was erroneous because it failed to "treat the trust deed note as an executory contract." An executory contract is "[a] contract that remains wholly unperformed or for which there remains something still to be done on both sides." *Executory Contract*, Black's Law Dictionary (9th ed. 2009); *see also Adams v. Reed*, 40 P. 720, 724 (Utah Terr. 1895) ("A contract is executory when the thing agreed has not been done." (citation and internal quotation marks omitted)). Buyers contend that both parties had obligations under the Note until November 2011 and that their claim filed in February 2012 was therefore timely because Seller was "still working" on "delivering clear titles to mobile homes as late as November 9, 2011." We conclude that the district court appropriately accounted for the executory nature of the contract at issue.

¶12     As stated, "a contract is executory when it remains wholly unperformed or there remains something still to be done on both sides." *High Valley Water Co. v. Silver Creek Inv'rs*, 2006 UT App 90U, para. 6 (citations and internal quotation marks omitted). Buyers correctly state that "the statute of limitations [for executory contracts] does not begin to run until the contract is either repudiated or complete." "The statute of limitations on a cause of action for breach of an executory contract generally does not begin to run until the time for full performance has arrived." *See State Comp. Ins. Fund v. WallDesign Inc.*, 132 Cal. Rptr. 3d 352, 356 (Ct. App. 2011); *see also Anticipatory Breach of*

*Executory Contract as Starting Running of Statute of Limitations*, 94 A.L.R. 455 §1 (1935) ("[T]he rule is generally established . . . [that], where an action is brought after the time fixed by an executory contract, for the beginning of performance by a party who has committed an anticipatory breach, the period of limitations runs not from the time of such breach, but from the time fixed for performance by the defaulting party."). However, a party need not wait until the time for full performance to bring a claim but may instead opt to bring suit when an anticipatory breach of the contract occurs. "An anticipatory breach occurs when a party to an executory contract manifests a positive and unequivocal intent not to render performance when the time fixed for performance is due." *Kasco Servs. Corp., v. Benson*, 831 P.2d 86, 89 (Utah 1992) (citation omitted). In such cases, a performing party "can immediately treat the anticipatory repudiation as a breach, or it can continue to treat the contract as operable and urge performance without waiving any right to sue for that repudiation." *Id.* (citations omitted); *see also* 54 C.J.S. *Limitations of Actions* §190 ("Where one party to an executory contract repudiates it before full performance has been made by the other, the latter is not bound to continue to perform but may elect to sue at once for the breach, in which event the statute begins to run from the time of the renunciation."). Thus, Buyers were not required to bring their claim when Seller first failed to provide the mobile home title or announced its refusal to do so but had the option to wait until the "time fixed for performance [was] due." *See Kasco Servs.*, 831 P.2d at 89. This is essentially what the district court recognized when, in an alternative ruling, it determined that the statute of limitations began running, not on the date when Seller first failed to produce the fifth mobile home title, but on the date when the last and final title should have been delivered by Seller had full performance occurred.[3]

---

3. We address Buyers' claims that the district court incorrectly determined the date the final title should have been delivered *infra* ¶¶ 14–20.

Accordingly, it is apparent from the district court's determination regarding the statute of limitations that the court recognized the executory nature of the agreement and applied the law appropriately.

¶13    At the hearing on the motion for summary judgment, Buyers also argued that the time for full performance on the Note was September 2015, the date their final loan payment was due. And they argue on appeal that the time for full performance did not occur until November 2011, when Seller handed over the final mobile home title. Essentially, Buyers argue that a contract remains executory—and therefore the statute of limitations is not triggered—until either the breaching party finally performs, regardless of when the performance was actually due, or until the entire contract has been fully performed. Buyers have failed to persuade us that either alternative is correct. As we discussed in *High Valley Water Co.*, 2006 UT App 90U, a contract is executory only when obligations remain on "*both* sides," and when one party's obligations are wholly completed, a contract is no longer executory and the statute of limitations may be triggered. *See id.* para. 6 (emphasis added). And in the event of an anticipatory breach, "[i]f the injured party opts to await performance, the claim accrues from the time fixed for performance, and the statute of limitations does not begin to run until that time." 54 C.J.S. *Limitations of Actions* § 190. Thus, a contract is no longer executory and the statute of limitations begins to run on a party's failure to perform once the time for full performance of that party's obligation has passed or, in other words, once that party's contract obligations would have been complete had they performed as the agreement required. Here, the district court concluded that Seller was obligated under the agreement to provide all mobile home titles but had failed to do so. And because the time had passed for Seller's full performance under the agreement, its time for performance had passed. Consequently, the contract was no longer executory with regard to Seller's obligations. We therefore affirm the district court's determination that the statute of limitations began to run

on the date that Seller would have fully completed its obligation under the Note to provide Buyers the mobile home titles had full performance occurred.[4]

C.      Date When Final Mobile Home Title Should Have Been Conveyed

¶14      Buyers claim that "note debt reduction is a reduction of the *principal* balance"—in other words the amount of monthly payment net of interest. By amortizing the amount of each payment between principal and interest, they calculate that they would have had to pay approximately $61,000 before they were entitled to the final mobile home title—a total figure that would not have been reached under the monthly payment arrangement in the Note until December 14, 2007. Accordingly, Buyers argue that the six-year statute of limitations did not expire until December 14, 2013, and that their claim was therefore timely.

---

4. Buyers reliance on *Colchester Security II, LLC v. Krispy Kreme Doughnut Corp.*, No. CL-2012-1377, 2013 WL 5622248 (Va. Cir. Ct. Aug. 23, 2012), seems misplaced. In *Colchester* the court stated that "the statute of limitations does not begin to run on a claim for breach of an entire contract, which is continuing, executory or capable of being enforced, until its termination." *Id.* at *4 (citation and internal quotation marks omitted). While Buyers do not expand on this citation, they imply that the contract was executory and that the statute of limitations did not begin to run because the Note required performance on their end—continued payments—beyond the date the final mobile home title should have been conveyed. But in *Colchester*, the court clarified that the rule identified in that case applies only to a "claim for breach of an *entire* contract" when the contract is "indivisible." *Id.* (emphasis added). Here, Buyers have not alleged breach of the contract at issue in its entirety or that their obligation to continue to make payments on the loan is indivisible from Seller's obligation to provide titles to the mobile homes.

They also contend that the April 14, 2005 date relied upon by the district court is the date that the eleventh and final mobile home title would be delivered only if "note debt reduction" was interpreted to mean the gross amount of each monthly payment, including principal and interest. Thus, Seller's obligation to provide title to all eleven mobile homes would be triggered under the Note when Buyers had made only eleven payments of $5,000 or $55,000 total—regardless of whether the Note's principal balance had actually been reduced by that amount. We conclude that Buyers did not preserve this argument below and have failed to adequately brief it on appeal.

¶15    Buyers did not bring this argument to the attention of the district court. Buyers neither argued their principal-only interpretation of "note debt reduction" nor offered an alternative to the April 14, 2005 date Seller put forward. Accordingly, Buyers' arguments were not "presented to the trial court in such a way that the trial court ha[d] an opportunity to rule on that issue," and therefore they are unpreserved for appeal. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted). Buyers appear to attempt to raise the issue under the plain error doctrine. "[T]o establish the existence of plain error . . . , the appellant must show the following: (i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful . . . or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993) (footnote omitted). "If any one of these requirements is not met, plain error is not established." *Id.* at 1209 (citations omitted). But Buyers' analysis of plain error is limited to one sentence and fails to address any of the three requirements. Accordingly, this issue is inadequately briefed and has not been properly raised on appeal. *See* Utah R. App. P. 24(a)(5)(B) ("The brief of the appellant shall contain . . . a statement of grounds for seeking review of an issue not preserved in the trial court."); *see also State v. Weaver*, 2005 UT 49, ¶ 19, 122 P.3d 566 (determining that plain error was not properly raised on appeal, because it was raised

only in appellant's reply brief); *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 23 n.9, 48 P.3d 918 (noting that a claim is inadequately briefed where the claim was supported by only "[a] single, vague sentence without citation to the record or legal authority"). Thus, we do not address Buyers' plain error argument, because it is inadequately briefed.

¶16 But "[e]ven if the issue were properly raised, we would conclude that the [district] court did not commit plain error," *Berkshires, LLC v. Sykes*, 2005 UT App 536, ¶ 21, 127 P.3d 1243, because the phrase "note debt reduction" is ambiguous at best as to whether that reduction should be calculated in the way Seller contends or in the way Buyers contend. Under the Note, Seller was required to "release and provide clear title to one mobile home for each $5,000 of note debt reduction." Seller's motion for summary judgment contained the following statement: "If [Buyers] had made timely payments of $2,095 per month for twenty-seven (27) months, they would have paid [Seller] $56,565.00 by April 14, 2005 and had title to all eleven mobile home units by that date." This statement is a mixed statement of fact and law. It states the fact that the total of Buyers' payments under the loan added up to more than $55,000 by April 14, 2005; and it implies a legal conclusion that Seller's obligation to convey title to each mobile home was triggered by the cumulating total of gross payments, i.e., both principal and interest, under the Note, rather than limited to net payments of principal balance only. The district court, at both the hearing and in its final written order, accepted this statement of fact as a valid interpretation of the agreement because Buyers failed to "set forth, by affidavit or otherwise, specific facts or other evidence that would create a dispute."

¶17 Furthermore, in their written response to Seller's motion for summary judgment, and specifically in their response to Seller's fact statement that the final mobile home title would have been delivered on April 14, 2005, Buyers stated only that, "[t]his is a disputed material fact." At the hearing on the motion

for summary judgment, the district court went through each disputed statement of fact in Seller's motion one by one, offering Buyers a chance to provide additional evidence or explanation as to why those facts should not be accepted as undisputed. But Buyers offered no additional evidence to support their contention that the April 14, 2005 date was not the correct date for delivery of the final mobile home title. Moreover, Buyers did not present the legal argument they now make on appeal, specifically that the $5,000 in "note debt reduction" required that the transfer of each title was limited to "reduction in the *principal* balance" and not the aggregation of the "total payments."

¶18 At the time the district court issued its order, rule 56(e) stated,

> [A]n adverse party may not rest upon the mere allegations or denials of the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Summary judgment, if appropriate, shall be entered against a party failing to file such a response.

Utah R. Civ. P. 56(e) (2014) (repealed 2015).[5] Here, Buyers offered only, "This is a disputed material fact," in response to Seller's statement that the final mobile home title was due on April 14, 2005. They did not contest the April 2005 date, nor did they challenge the underlying legal position that the Note's title-transfer obligation was tied to net, not gross, payments. And

---

5. After the district court's January 2014 order, the Utah Rules of Civil Procedure were amended in 2015 with the "objective . . . to adopt the style of Federal Rule of Civil Procedure 56." Utah R. Civ. P. 56 advisory committee's note to 2015 amendment. We cite the version of Utah Rule of Civil Procedure 56 in effect at the time the district court granted summary judgment.

they did not provide the district court with the principal and interest amortization schedule that they included in their opening brief on appeal, from which they now argue that the net payments did not exceed $55,000 until July 14, 2007. This type of "mere . . . denial[]" absent "specific facts showing that there is a genuine issue for trial" violated rule 56(e). *See id.* Accordingly, the district court was within its discretion to determine that Buyers had failed to comport with rule 56(e) and to accept as undisputed Seller's statement regarding when the final mobile home title would have been due.

¶19 Thus, any error regarding the trial court's acceptance of Seller's statement would not have been obvious to the trial court because the interpretation set forth by Seller was plausible given the language of the Note. *Cf. Berkshires*, 2005 UT App 536, ¶ 21 (determining that no plain error existed because "the statutory provisions at issue" in that case "are not entirely clear" and any error would not have been obvious). We therefore affirm the district court's determination that the statute of limitations began running on April 14, 2005.

¶20 In summary, we conclude that the district court did not err in determining that Utah Code section 78B-2-113 did not toll the statute of limitations or in failing to recognize the contract at issue as executory. And we affirm the district court's determination that the final mobile home title was due on April 14, 2005. Accordingly, the district court's grant of summary judgment in favor of Seller is affirmed.

## II. Seller's Cross-Appeal: Attorney Fees

¶21 Seller contends that the district court improperly denied its request for attorney fees. Specifically, Seller asserts that the court erred in determining that Buyers were not in default. In reaching its decision, the district court first relied on the language of the Note, which states, "If this note is collected by an attorney after default in the payment of principal or interest,

either with or without suit, the undersigned, jointly and severally, agree to pay all costs and expenses of collection including a reasonable attorney's fee." The district court then determined that under this provision, Seller was not entitled to attorney fees without first demonstrating that Buyers were in default. The court concluded that Buyers had "not been shown to have been in default merely because this court has determined that their claims are barred by limitations" and therefore "attorney fees may not be awarded pursuant to the parties' contract except where a default is shown." Accordingly, the district court denied Seller's request for attorney fees.

¶22 We see no reason to disagree with the district court. Before ruling on the issue of attorney fees, the district court asked the parties to brief whether "[Seller] may still recover [its] attorney fees under the parties' contract" even "if [Buyers'] claims were barred on limitations grounds." The district court found it "[s]ignificant[]" that "none of [Seller's] arguments . . . discuss[ed] the actual language" of the contract. In its ruling, the court cited a paragraph of the Note and found that the contractual language provided for attorney fees "[u]pon the occurrence of any default" and that this language was consistent with the "[o]ther attorney fee provisions in the trust deed," which were also "tied to default." As part of its analysis, the court quoted *Faulkner v. Farnsworth*: "The contractual language does not award attorney fees to the prevailing party who succeeds in enforcing the agreement, but against the defaulting party whose default necessitates enforcement. As neither party was held in default, neither was entitled to attorney fees." 714 P.2d 1149, 1151 (Utah 1986) (per curiam). Here, the district court determined that "attorney fees may not be awarded pursuant to the parties' contract except where a default is shown." The court then reasoned that because Buyers "have not been shown to have been in default merely because this court has determined that their claims [of breach of contract against Seller's is] barred by limitations," Seller was not entitled to attorney fees under the Note.

¶23    It appears that the district court denied the request because the running of the statute of limitations was what allowed Seller to "succeed[] in enforcing the agreement" and did not base its decision on the argument that Seller had shown that Buyers had defaulted. In fact, the court also gave the impression that it had some reservations about Seller's actions. Specifically, the court noted that it was concerned with the letter Seller sent Buyers in September 2005. The court stated,

> I'm focusing on that letter, September 20, 2005. You know, the defendants—and by the defendants I mean Fair Company and the Fairbanks said, 'Gosh, we can't—we don't have any more titles to give you,' and it would seem to me that that would be a material breach at that point.

¶24    Therefore, because the district court found that attorney fees were only recoverable in the event of a default and Seller had not shown that Buyers were in default "merely because . . . their claims are barred by limitations," we conclude that the district court did not err in denying Seller's request for attorney fees.

## CONCLUSION

¶25    Because we conclude that the district court did not err in granting Seller's motion for summary judgment and did not err in denying Seller's motion for attorney fees, we affirm.

————————