2003 UT App 441

WELLS FARGO BANK, N.A., formerly known as First Interstate Bank of Utah, as personal representative of the Estate of Franklin J. Bradshaw and as representative and attorney-in-fact of the selling shareholders of Bradshaw Auto Parts Company of Mt. Pleasant, Inc., Bradshaw Automotive Parts Company Incorporated, Bradshaw Auto Parts Whse., and Bradshaw Auto Parts Company, Plaintiff and Appellant,

v.

TEMPLE VIEW INVESTMENTS, Greg Stuart, William D'Evelyn, and Richard C. Bennion, Defendants and Appellees.

No. 20030050–CA.

Court of Appeals of Utah.

Dec. 26, 2003.

Rehearing Denied Jan. 21, 2004.

John A. Snow and Bradley M. Strassberg, Van Cott Bagley Cornwall & McCarthy, Salt Lake City, for Appellant.

Michael L. Deamer, Randle Deamer & Lee PC, Salt Lake City, for Appellees.

Before Judges JACKSON, DAVIS, and THORNE.

## OPINION

JACKSON, Presiding Judge:

¶ 1 Appellant Wells Fargo Bank (Wells Fargo) appeals the order of the district court granting summary judgment to Appellees Temple View Investments, and its principals Greg Stuart (Stuart), William D'Evelyn (D'Evelyn), and Richard Bennion (Bennion), collectively referred to herein as Temple View. We affirm.

## BACKGROUND

¶ 2 Wells Fargo brought an action for breach of contract against Temple View on May 15, 2002. The action is based on a promissory note dated November 1, 1985, in the principal amount of $339,232.30, executed by Temple View. In 1991, Wells Fargo filed an action to collect an unrelated debt from a third party, who was also the holder of the 1985 Temple View note. In late 1992 or early 1993, Wells Fargo's former counsel, John Anderson, met with two of Temple View's principals, Stuart and D'Evelyn. He informed them of Wells Fargo's intention to acquire the note from the holder. He also informed them that if the note was in default, Wells Fargo would consider bringing legal action against Temple View and its principals. Temple View's principals denied that they personally guaranteed the note. Anderson asked Stuart and D'Evelyn to cooperate in determining the principal amount owed on the note, as both parties' records regarding payments and distributions of payments were unclear. In the spring of 1993, Stuart, D'Evelyn, and Bennion provided Anderson with personal financial statements in support of their efforts to resolve the question regarding the note.

¶ 3 The parties continued to correspond, in writing and in person, for the next several years. Anderson met with and corresponded with Temple View and its previous counsel on a number of occasions in order to resolve the matter. Anderson informed Temple View that Wells Fargo had not declared a default, that payments on the note should cease temporarily, and that no default would be declared until a proper accounting could take place. In a letter from its attorney, Thomas Rogan, written in August 1997 (the Rogan letter), Temple View indicated a desire to compromise on the matter. Ultimately, the parties could not agree on a resolution.

¶ 4 The note was due and payable, according to its express terms, on or before June 1, 1995. Wells Fargo filed suit against Temple View on May 15, 2002, six years and eleven months after the due date. Temple View filed a motion to dismiss the action because it was filed after expiration of the six-year statute of limitations provided by Utah Code Annotated section 70A-3-118 (2001) and Utah Code Annotated section 78-12-23 (2002). Wells Fargo opposed the motion with an affidavit from John Anderson (the Anderson affidavit), which attempted to introduce the Rogan letter into the record. Wells Fargo argued that the Rogan letter, which expressed a desire to resolve the matter, constituted an acknowledgment of the debt and thus renewed the obligation. Further, Wells Fargo argued that its failure to declare default unilaterally extended the date the note was due.

¶ 5 Temple View filed a motion to strike the Anderson affidavit on the grounds that the affidavit lacked foundation, consisted of hearsay, and otherwise consisted of inadmissible evidence under Utah Rule of Evidence 408, because it was an offer to settle a disputed matter. The district court ruled that the Rogan letter was not a reaffirmation of the debt and granted Temple View's motion for summary judgment based on the statute of limitations. Then, Wells Fargo filed a motion for a new trial. The district court denied that motion on the ground that Wells Fargo had not submitted anything new in the facts or the law. Wells Fargo appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 6 Wells Fargo challenges the district court's conclusion as a matter of law that Wells Fargo's delay in declaring default did not extend the note's due date. Wells Fargo also challenges the district court's conclusion that, as a matter of law, Temple View did not acknowledge the debt represented by the note. We review a district court's conclusions of law for correctness, granting

them no deference. *See Schaerrer v. Stewart's Plaza Pharm., Inc.*, 2003 UT 43,¶ 14, 79 P.3d 922.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). When reviewing a district court's [grant] of summary judgment, we grant no deference to the district court's legal conclusions and review them for correctness. *Id.*[1]

## ANALYSIS

### I. Extension of the Note's Due Date

■■■ ¶ 7 Wells Fargo first challenges the district court's conclusion that the due date was not extended, thus tolling the statute of limitations. Wells Fargo argues that its own delay in declaring default unilaterally extended the note's due date.[2] In support of this argument, Wells Fargo points to the note's own provision that contemplates the possibility of extending the due date. That provision states that "[t]he makers and endorsers ... expressly agree that this note, or any payment thereunder, may be extended from time to time without in any way affecting the liability of the makers and endorsers thereof."[3] Beyond this contract provision, which does not directly permit unilateral extensions at the option of the holder, Wells Fargo's brief contains neither legal authority nor legal analysis supporting the proposition that a holder's failure to declare default extends a note's due date for purposes of determining when a breach occurred. All of the cases cited by Wells Fargo deal with mutual modification of note provisions and are inapplicable here. Thus, Wells Fargo's unilateral extension argument gives us no legal basis upon which to reverse the district court's ruling.[4] Where, as here, "[p]roof of mutual assent is absent," we will not give legal force to a party's "attempt to unilaterally alter" the terms of the note. *Western Sur. Co. v. Murphy*, 754 P.2d 1237, 1239 (Utah Ct.App. 1988). Thus, we conclude "the trial court correctly ruled that the [purported extension] had no force or effect." *Id.*

### II. Acknowledgment of Debt on the Note

■■■ ¶ 8 Next, Wells Fargo argues that Temple View made an enforceable acknowledgment of the debt on the note. The Anderson affidavit avers that Anderson had

---

1. Wells Fargo also challenges the district court's denial of its motion for a new trial. We decline to address this challenge because Wells Fargo has not presented us with an adequate record of the district court's ruling denying the motion for new trial. *See Gorostieta v. Parkinson*, 2000 UT 99,¶ 34, 17 P.3d 1110 ("[T]he burden is upon the appellant to provide an adequate record for review, and without an adequate record, we must assume the regularity of the proceedings below."). The most we can find in the record with respect to this ruling is the district court's order that denied Wells Fargo's motion for new trial "for the reasons stated in open court." Wells Fargo has not provided a transcript of the hearing wherein the district court explained its decision. Thus, "we must assume the regularity of the proceedings below." *Id.*

2. On appeal, Wells Fargo attempts to recharacterize its unilateral extension argument, which it made below, as a mutual modification argument. Nothing in the record, however, indicates that Wells Fargo argued below that the parties mutually assented to a modification of the note's due date. Thus, the modification argument was not preserved for our review, and we will not address it. *See Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48,¶ 14, 48 P.3d 968 ("[I]n order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.").

3. Temple View argues the phrase "without in any way affecting the liability of the makers and endorsers thereof" renders void any attempt to modify the due date to reach beyond the statute of limitations, since such a modification would clearly "affect[] the liability of the makers and endorsers." However, we believe the phrase could be read to mean the exact opposite, that a mutual agreement to modify the due date will not *otherwise* affect the parties' liabilities. However, for this to be a determinative issue, Wells Fargo must first demonstrate the due date was extended. Because we determine the district court correctly ruled that the due date was not extended, this issue is moot.

4. *See* Utah R.App. P. 24(a)(9) (requiring appellants' briefs to set forth legal authority for their challenges); *Burns v. Summerhays*, 927 P.2d 197, 199 (Utah Ct.App.1996) ("[T]o permit meaningful appellate review, briefs must comply with the briefing requirements sufficiently to 'enable us to understand ... why, *under applicable authorities*, [alleged] errors are material ones necessitating reversal....'" (Emphasis added.)).

met with and corresponded with Temple View and its previous counsel on a number of occasions over a period of years in order to attempt good-faith settlement. Further, Anderson's affidavit avers that he informed Temple View that Wells Fargo had not declared a default, that payments on the note should cease temporarily, and that no default would be declared until a proper accounting could take place. Finally, the affidavit states that Temple View indicated a desire to compromise the dispute by the Rogan letter.[5] The Rogan letter stated,

> [a]s we have discussed recently, this may be a good time to resolve the long outstanding matter of liability of the November 1, 1985 promissory note from Temple View Investment. As you know, I represent Temple View Investment ... principals Stuart, D'Evelyn and Bennion. The accruals on the note exceed $390,000.00.

Wells Fargo argues "Rogan's letter clearly acknowledges an existing liability. ... Rogan went further, and noted an amount owed under the note in question."

¶ 9 Utah Code Annotated section 78–12–44 (2002) governs this argument:

> In any case founded on contract, when ... an acknowledgment of an existing liability, debt or claim ... shall have been made, an action may be brought within the time prescribed for the same after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby.

The Utah Supreme Court has interpreted section 78–12–44 to mean that in order to file an action outside the statute of limitations, based on a new acknowledgment, the written acknowledgment must be clear, distinct, direct, unqualified, and intentional:

> In *Salt Lake Transfer Co. v. Shurtliff*, 83 Utah 488, 489, 30 P.2d 733, 736 [ (1934),] Mr. Justice Folland, speaking for this

court, noted ... the rule that "nothing short of a distinct, direct, unqualified, and intentional admission of a present, subsisting debt on which a party is liable will be sufficient to take the obligation out of the statute and start it running anew." ... "The acknowledgment necessary to start the statute [running] anew must be more than a hint, a reference, or a discussion of an old debt; it must amount to a clear recognition of the claim and liability as presently existing."

*Beck v. Dutchman Coalition Mines Co.*, 2 Utah 2d 104, 269 P.2d 867, 869–70 (1954) (citation omitted).

■ ¶ 10 We are not persuaded that the Rogan letter clearly acknowledges any existing liability. Indeed, the subject of the language Wells Fargo quotes is "the long outstanding matter of liability," which indicates a dispute regarding whether Temple View was liable to pay the note. In fact, the next paragraph in the Rogan letter, omitted in Anderson's affidavit and not quoted by Wells Fargo on appeal, states, "[y]ou may not ... be aware of certain facts which give rise to a defense against liability based on fraud [in the inducement]." The remaining five paragraphs of the letter outline the basis of a fraud in the inducement defense and propose a settlement, given "the costs and uncertainties of litigation." Taken as a whole, the Rogan letter does not contain " 'a distinct, direct, unqualified, and intentional admission of a present, subsisting debt.' " *Beck*, 269 P.2d at 870 (citation omitted).

## CONCLUSION

¶ 11 Wells Fargo has made no legitimate legal argument that its own delay in declaring default resulted in a unilateral extension of the note's due date. Further, Temple View's purported acknowledgment of debt

---

5. Wells Fargo challenges the district court's ruling that the Anderson affidavit and the Rogan letter are inadmissible. We decline to address this challenge, however, because we conclude that the statute of limitations bars Wells Fargo's suit, even with the affidavit and letter. Thus, the district court's evidentiary rulings, even if incor-

rect, are at most harmless error. *See Hall v. NACM Intermountain, Inc.*, 1999 UT 97, ¶ 21, 988 P.2d 942 ("We do not reverse the trial court for committing harmless error."). Accordingly, our opinion analyzes the statute of limitations challenge, assuming without deciding the admissibility of the Anderson affidavit and the Rogan letter.

under the note falls far short of the legal standard in Utah for an enforceable acknowledgment. Thus, Wells Fargo's action, brought more than six years after its cause of action accrued, was barred by the statute of limitations. Accordingly, the district court correctly entered summary judgment dismissing Wells Fargo's action. We affirm.

¶ 12 WE CONCUR: JAMES Z. DAVIS, Judge, and WILLIAM A. THORNE JR., Judge.